UNITED STATES of America, Libelant,

v.

STEEL TANK BARGE RAINIER and/or Rainier Barge Company, Respondent.

No. 9441.

United States District Court
W. D. Louisiana,
Lafayette Division.

Oct. 29, 1964.

Edward L. Shaheen, U. S. Atty., and L. H. Harris, Asst. U. S. Atty., Shreveport, La., for libelant.

James E. Ross, Houston, Tex., and Terriberry, Rault, Carroll, Yancey & Farrell, Francis Emmett, New Orleans, La., for respondent.

PUTNAM, District Judge.

The above entitled and numbered cause having come on for hearing in regular order, and the Court having reviewed the pleadings, evidence, pretrial stipulations, briefs, and arguments of counsel, does hereby make and enter the following:

## FINDINGS OF FACT

■ On April 30–May 1, 1962, the Steel Tank barges SHASTA and RAINIER were loaded with distillate at Union Oil Company of California docks on East Lake Palourde. They arrived and departed in tow of the Tug MARY EDNA.

■ These barges were identical in hull design, being 240 feet long, 44 feet wide, and 11 feet 4 inches deep at the centerline. They were new barges, having been built in 1960 and having received their first renewal certificates on April 4, 1962.

■ Distillate is a form of oil within the meaning of the Oil Pollution Act of 1924.

■ Before the barges were loaded at East Lake Palourde, each tank of each barge was gauged by an employee of Union Oil Company of California and in the presence of the captain and/or the mate of the Tug MARY EDNA. Before loading, the barges had a draft of 1½ to 2 feet, and all tanks, except the after tanks, were dry. The stern tanks, port and starboard, in each barge contained about two inches of prior cargo each. There was no water in any tank of either barge. Prior to and during the loading the tanks of the barges were gaseous and could not be entered for internal inspection.

■ Loading of the barges was conducted principally during hours of dark-

ness, and the tow was preparing to leave around daylight on May 1, 1962.

■ The activities of the Union Oil Company gauger, the captain of the Tug MARY EDNA, and the mate of the Tug MARY EDNA during loading were such that they would have discovered any leaking of oil if any had leaked at the time of loading. Neither of these barges was leaking when loading began nor when loading was completed, and if there was any defect in either of them, or if either of them was unseaworthy in any way, it was not discoverable by due diligence; we do find further that no special inspection was made of these barges other than to gauge the tanks at the time of loading. No leakage was indicated at that time, which encompassed a period of several hours, and no oil was seen floating on the surface of the water in the slip where the loading took place.

■ The flotilla, made up with the Barge RAINIER at the bow of the Barge SHASTA next followed by the Tug MARY EDNA, departed East Lake Palourde around 6:00 A.M. on May 1, 1962, bound for Houston, Texas. Upon arrival at Bayou Boeuf Lock it was found that the Barge RAINIER was leaking very slightly from her No. 2 starboard tank. She was in the lock for about 45 minutes during which time an oil slick 200 to 250 feet long developed. This oil slick covered less than ⅛ of the water surface area inside the lock.

■ On instructions from the lockmaster the flotilla was backed out of the lock where the cargo from the No. 2 starboard tank was pumped into available space in other tanks on the two barges. After pumping off this cargo, a leak was discovered in this tank. Water could be heard spewing at the outboard side of the tank and through the expansion trunk water could be seen running toward the center of the barge because of her recently acquired port list. Because of the fumes in the tank, however, the exact location of the leak could not be discovered by entering the tank.

■ After completion of the voyage to Houston, Texas, the Barge RAINIER was drydocked where it was found that she had struck a submerged wooden object. The piece of wood had made a small irregular shaped hole in the bottom of the No. 2 starboard tank at the knuckle. The hole was about 8 inches inboard from the outer skin of the barge and was still plugged with the piece of wood when the vessel was hauled out. The wood fit tightly into its own hole so that it made almost a perfect plug in the bottom of the barge. This plug had to be removed by driving it out with a hammer.

■ ■ Neither the captain nor the mate of the Tug MARY EDNA knew how or when the Barge RAINIER was holed. The striking of the submerged piece of wood was an accident which could not have been avoided by reasonable care, prudence, and caution. No negligence of either of the vessels or any members of the crew caused or contributed to the accident. The striking of a submerged piece of wood was the sole cause of the small leak of oil which was first observed in Bayou Boeuf Lock.

■ Bayou Boeuf is an inland waterway of the United States in which the tide ebbs and flows.

## CONCLUSIONS OF LAW

■ 1. This Court has jurisdiction over the subject matter and over the Barge RAINIER *in rem* under 33 U.S.C. § 434.

2. Bayou Boeuf is "coastal navigable waters of the United States" as defined in 33 U.S.C. § 432.

3. On the occasion in question the Barge RAINIER was a vessel subject to the provisions of 33 U.S.C. § 433.

4. The oil spilled into Bayou Boeuf Lock was spilled through an unavoidable accident. United States v. The Catherine, 212 F.2d 89 (CA 4, 1954), Hegglund v. United States, 100 F.2d 68 (CA5, 1936); 33 U.S.C. § 433.

5. The Barge RAINIER is not liable *in rem* for any penalty under 33 U.S.C. § 433.